**UNITED STATES of America,**

v.

**Cornell FOSTER, Appellant.**

**No. 91–3283.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1992.

Decided Jan. 8, 1993.

---

Jonathan Zucker, Washington, DC, (appointed by this court) for appellant.

Steven N. Berk, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, and Erik P. Christian, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before: RUTH BADER GINSBURG, SILBERMAN, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

## I. INTRODUCTION

Cornell Foster was convicted of possessing crack cocaine with intent to distribute the drug. He contests his conviction on two grounds. First, Foster maintains that the trial judge improperly curtailed several inquiries on cross-examination of the police officer whose direct testimony formed the core of the government's case. Second, Foster asserts that the prosecutor, in his closing argument, improperly alluded to alleged prior drug dealing by Foster. Concerning curtailment of defense counsel's cross-examination of the police officer, we are satisfied that the judge acted within his discretion regarding most of the inquiries. We hold, however, that it was serious error to limit defense counsel's probe into the anomalous fact that Foster was arrested holding much less cash than would be expected of someone who had been selling drugs moments before. We also conclude that it was improper for the prosecutor to insinuate that he had knowledge of prior instances of drug dealing by Foster when nothing in the trial record supported the insinuation. Rejecting the government's ultimate argument that these errors were harmless, we reverse the conviction and remand for a new trial.

## II. BACKGROUND

The government's evidence at trial described the following episode. At about 2 a.m. on April 9, 1991, Officer Hebron was stationed at an observation post on the 500 block of Longfellow Street in northwest Washington, D.C.; from that post, Hebron observed three men flagging down cars and selling the occupants what appeared to be crack cocaine. Specifically, during a span of about twenty minutes, Hebron observed two transactions involving the man he later identified as Foster, and three transactions involving Robert McGee. The third man on the scene, dressed in white, was never apprehended and never identified.

Officer Hebron broadcast general descriptions of the three suspects—including their race and sex and the color of their clothes—to a police arrest team waiting nearby. As Officer Solloso, a member of the arrest team, approached the residence out of which the suspects appeared to be working (517 Longfellow St.), he observed Foster at the doorway just entering the house. Solloso followed Foster inside and saw Foster drop a plastic bag as he ascended the staircase. Another arrest team officer, who had not observed Foster, recovered a plastic bag containing crack—the *same* bag that Foster dropped, the government contends—near the bottom of the staircase. Foster and McGee were detained, and after Hebron came into the house and positively identified them as the men he had just observed, they were arrested.

Foster and McGee were eventually charged with possession with intent to distribute five grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841. Before trial, McGee pled guilty and agreed to testify for the government in return for lenient treatment.[1] A trial was held, and on July 3, 1991, the jury found Foster guilty.

### III. DISPOSITION

*A. Limits on Cross–Examination of Officer Hebron.* Officer Hebron was the only person besides McGee, an admitted perjurer,[2] to observe the drug dealing on Longfellow St. on the night in question and to identify Foster as one of the drug sellers. The defense, therefore, strenuously endeavored to undermine Hebron's eyewitness testimony. A principal defense strategy was to paint this key witness as an inexperienced police officer,[3] one who failed to obtain a dependable description of the three men he had observed dealing crack, a novice anxious to identify Foster lest his own faulty surveillance be blamed

for an unsuccessful prosecution. On appeal, Foster complains that the judge improperly cut off six relevant lines of inquiry directed at Hebron on cross-examination.

With respect to three of these lines of inquiry, the trial judge plainly acted within his broad discretion to place reasonable limits on the cross-examination of witnesses. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) ("[T]rial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *cf.* FED.R.EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). At one point, the judge told the defense to "move on" after the defense successfully brought out Hebron's inconsistent statements regarding the side of the cars (passenger side or driver side) on which the drug transactions took place. At another point, the judge told the defense the same thing after the defense brought out Hebron's inconsistent statements regarding the direction of the traffic (eastbound or westbound) on Longfellow St. In both instances, the defense effectively conveyed Hebron's inconsistencies; any further questioning into these relatively minor details would have been redundant or of only marginal significance. At a third point, defense counsel asked Hebron why he did not radio other officers to pursue the car-bound drug *purchasers*. "Well, sir," Hebron responded, "the district was so busy." Hebron's response was clear, and we find no error in

---

1. The government agreed (1) to consider an application for a sentence reduction for the conviction and (2) to drop a separate drug charge pending against McGee in the Superior Court of the District of Columbia.

2. At trial, McGee acknowledged that he gave false testimony at a pretrial hearing on a motion to suppress evidence.

3. Hebron had been on the force only fourteen months as of April 1991.

the judge's refusal to allow further questioning on that subject.

Much less supportable was the trial judge's refusal to allow the defense to question Hebron about his knowledge of—and compliance with—standard police procedures in lookout situations with respect to (1) the specificity of broadcast descriptions and (2) the use of cameras. The jury did learn, it is true, that Hebron's broadcast descriptions were general in character, i.e., that they did not include, for example, the age, build, or height of the suspects or whether they had facial hair. The jury also learned that Hebron did not use a camera. The defense was not permitted to probe further, however, i.e., to inquire whether Hebron's conduct indicated substandard police work. The interrogation disallowed was more than "marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435. Notably, the information the defense sought to extract might have bolstered Foster's position that Hebron had a motive for wrongly identifying him.

■ We pretermit the question whether it was error to limit the cross-examination of Hebron on standard police procedures, and turn to a deeper flaw. It *was* error, we are persuaded, for the judge to curtail defense counsel's probe into Hebron's direct testimony on this critical point: Upon his arrest, why did Foster have much less cash on him than would be expected of someone who had just made two drug sales? Hebron testified at trial that, after each drug sale, Foster gave the proceeds to the third suspect—the man in white—who came from the porch of the house numbered 517 into the street. Yet, when the defense tried to question Hebron about the absence from Hebron's preliminary hearing testimony of any reference to Foster turning money over to the man in white,[4] the trial judge promptly sustained the prosecu-

tor's objection. "This [line of questioning]," the judge declared, "is totally inappropriate and improper."

At oral argument, counsel for the government could not offer a tenable ground for the prosecutor's objection or explain why the judge might have thought the inquiry "totally inappropriate and improper." Nor can we. It was vital to the government's case that Hebron convincingly explain why Foster, if in fact the man Hebron observed selling drugs, had so little money on him when arrested. A credible explanation was all the more critical given that McGee, though a witness for the prosecution, later testified that he knew of no third person outside the house to whom Foster gave the proceeds of his drug sales. With this consideration in view, the district judge should have allowed the defense to use its most potent piece of evidence—Hebron's prior silence at the preliminary hearing—to question the veracity of Hebron's trial explanation.

On brief, the government contends that Hebron's silence in the *prosecution report*—which the defense did bring out at trial—made the inquiry into Hebron's silence at the preliminary hearing cumulative. We disagree. We note, first, that the trial judge could not have acted out of a concern about cumulative evidence, for he cut off the inquiry into Hebron's preliminary hearing testimony *before* the defense questioned Hebron on the prosecution report. We also note that Hebron's silence in the prosecution report may have appeared far less probative of his credibility than his silence at the preliminary hearing.[5] Most important, however, we are simply not persuaded by the government's contention that it was enough for the jury to learn of one instance of Hebron's prior silence. Convincing the jury that Hebron gave false testimony at trial on the role of the man in white was a task as challenging as it was

---

**4.** At the preliminary hearing, Hebron did report observing a man "wearing all white," but he gave no details about the man's role in the operation.

**5.** We so conclude for two reasons: (1) Hebron did not write the prosecution report himself but

merely reviewed it after it had been composed by other officers; and (2) although Hebron conceded the absence of any reference in the prosecution report to Foster giving his sale money to the man in white, Hebron stated twice that he did record the fact in his notebook.

essential to Foster's defense. We hold that it was neither rational nor fair, under the circumstances here presented, to confine defense counsel to one instance of prior silence. *Cf.* 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 403[06] (1992) ("Certainly, Rule 403 does not mean that a court may exclude [arguably cumulative] evidence that will cause delay regardless of its probative value. If the evidence is *crucial*, the judge would abuse his discretion in excluding it.") (footnote omitted) (emphasis added).

■ *B. Remarks in Rebuttal Argument.* Twice during closing argument the prosecutor strayed from "the facts in evidence." *See United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir.) (recalling " '[t]he fundamental rule, known to every lawyer,' " that " 'argument is limited to the facts in evidence' ") (citation omitted) (quoting *United States v. Fearns*, 501 F.2d 486, 489 (7th Cir.1974)), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982). Officer Hebron testified that his observation of the drug-selling activity upon which the charges against Foster were based commenced around 2:12 a.m. on April 9, 1991 and lasted some twenty minutes. The record contains no evidence of drug dealings by Foster on any prior day or of sales going on for several hours that day. Nevertheless, the prosecutor stated in his rebuttal argument:

> And when the dark clouds come above, the cloud of fear, the only clouds in this case is when Mr. Foster was out there selling drugs. He brought upon his own cloud, his own cloud of fear. It's not the cloud now since we're in trial. The cloud started long, long before, and perhaps the cloud started long before April 9th. No tips. There were some complaints, and that's why the officers—
>
> [Defense counsel]: Objection.
>
> [Prosecutor]:—said he and Officer Hebron went upstairs. He even went up there with binoculars to aid his vision....

Shortly thereafter, the prosecutor commented:

> Drinking, dope, selling drugs—that was what was going on. Dealing all day long, all morning long.
>
> [Defense counsel]: Objection, Your Honor.

The defense sought a curative instruction, but the trial judge declined to give one, stating that "[t]he jury's recollection of the evidence will control."

With no basis in the record for the prosecutor's remarks,[6] and no door opened for those remarks by defense statements, *see Reagan*, 694 F.2d at 1080, we can detect no purpose for the comments other than an impermissible one—to convey to the jury that the prosecution knew of crimes, other than the one charged, committed by Foster before April 9 and even on that very day or morning. *Cf.* FED.R.EVID. 404 (evidence of other crimes inadmissible to prove defendant's propensity to commit crime). While the impropriety of the remarks should have been apparent to the law-trained mind, we have no reason to believe the jury discredited the prosecutor's "other crimes" insinuations in finding Foster guilty.[7]

---

**6.** As to the "cloud" comment, the government concedes the statement "could be read to refer to prior drug dealing," but asserts "it's not completely clear ... that the prosecutor was referring to prior drug dealing carried out by [Foster]." Brief for Appellee at 26. If not "completely clear," the statement, in context, is most logically read to pertain to Foster. The government suggests no other dealer, no other person about whom "[t]here were some complaints."

Concerning the "[d]ealing all day long, all morning long" remark, the government asserts an evidentiary basis in McGee's testimony that Foster had been involved in eight separate transactions (Officer Hebron testified to observing five, two directly involving Foster) and in

the police observation of Foster dropping a plastic bag containing fifteen crack-filled ziplock containers. *See id.* at 27. The prosecutor, of course, could have pointed precisely to this evidence instead of suggesting that the dealing witnessed during an interval between 2:00 and 3:00 a.m. in fact spanned many hours more.

**7.** The trial court's standard reminder in charging the jury that the arguments of counsel are not evidence was an insufficient alert. *Cf. United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir.1978) (order to strike, "without any further instructions, was insufficient to remove the danger that the jury would understand the prosecutor's comment as indicating that defendant had

C. *Remand for a New Trial.* The government ultimately argues that any error here was harmless. Primarily, the prosecution urges that the eyewitness testimony of Officer Solloso sufficed to sustain the verdict beyond any reasonable doubt.[8] Again, we disagree. The link between the plastic bag Solloso saw Foster drop from the stairs and the bag later found by a different officer, we note first, was never firmly established. More important, we must consider this pivotal question. Suppose the defense had had the opportunity to probe Hebron further and to highlight the fact that Hebron's full account at the preliminary hearing, given so close in time to the episode he observed, included no explanation why Foster, the alleged drug seller caught moments after making sales, had very little cash in his possession. Whatever else was in the record, could a rational trier of fact be left with a reasonable doubt whether Foster was in truth one of the drug dealers Hebron observed? We cannot answer that question, definitely "No." When we add in the potentially prejudicial effect of the prosecutor's improper remarks, we have no choice but to reverse the judgment of conviction and remand the case for a new trial.

*It is so ordered.*

---

been involved in many other brushes with the law").

**8.** The prosecution also points to Robert McGee's eyewitness testimony of drug transactions in-

volving Foster. In a harmless error analysis, however, we are loathe to put much weight on the testimony of an admitted perjurer.