## State of Vermont v. Kenneth Fuller

[721 A.2d 475]

No. 95-534

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 11, 1998

Motion for Reargument Denied October 14, 1998

*Peter R. Neary*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *Henry Hinton*, Appellate Attorney, Montpelier, and *Kenneth Fuller*, pro se, Swanton, for Defendant-Appellant.

**Skoglund, J.** Defendant Kenneth Fuller appeals his conviction for aggravated sexual assault of his step-son in violation of 13 V.S.A. § 3253(a)(9). Defendant contends that (1) the evidence was insufficient to permit his conviction for violating 13 V.S.A. § 3253(a)(9), and (2) the trial court denied defendant his federal and state constitutional rights to confront an adverse witness and to call for evidence in his favor by excluding Donna Fuller's (defendant's wife) out-of-court statements made to a third party, and by excluding letters written by Ms. Fuller, and mailed to defendant while he was in jail. We affirm.

Defendant and Ms. Fuller were married in 1993. Ms. Fuller has one son, S.E., from a previous relationship. At the time of the incident, S.E. was eleven years old. According to S.E., one evening while Ms. Fuller was at work and defendant and S.E. were at home alone, defendant purchased beer and forced S.E. to drink some of it. Soon

afterwards, S.E. felt tired and went into a bedroom to sleep. Defendant followed S.E. into the bedroom and laid down next to the boy on the bed. While talking to S.E. about sex, defendant pulled down his pants and began to masturbate. Realizing what defendant was doing, S.E. attempted to get off of the bed but defendant grabbed the boy, pulled down S.E.'s pants, and placed his mouth on S.E.'s penis for five to ten seconds. S.E. was finally able to escape and ran into the living room. Defendant followed S.E. into the living room, threw the boy onto a couch, and again placed his mouth on S.E.'s penis for approximately a minute.

About one week later, S.E. informed Ms. Fuller about the sexual assault. According to Ms. Fuller, when she confronted defendant about the allegation, he initially denied it but later admitted the offense. In addition, Ms. Fuller related the boy's allegation to her sister during a telephone call. The sister reported the incident to the Department of Social and Rehabilitation Services (SRS). Approximately one month later, SRS interviewed the boy and Ms. Fuller. At that time, they both denied that any sexual assault had occurred. Ms. Fuller also denied that she had talked to her sister about such an incident.

A few months later, however, after defendant was arrested for a domestic altercation between defendant and Ms. Fuller, S.E. and Ms. Fuller reported the alleged sexual assault to the police. While defendant was being held in pretrial confinement on the aggravated domestic assault charge, Ms. Fuller denied to the defense attorney's investigator that the sexual assault took place. About one month after defendant's arrest for domestic assault and while still in pretrial confinement, defendant was charged with aggravated sexual assault of S.E.

At his trial for aggravated sexual assault, defendant maintained his innocence and contended that S.E. and Ms. Fuller had concocted the charges against him because of defendant's abusive conduct towards Ms. Fuller and the boy's resentment of defendant's intrusion into S.E.'s relationship with his mother. Furthermore, defendant asserted that Ms. Fuller's sister had falsely reported the sexual abuse claim to SRS so as to wrest custody of S.E. away from Ms. Fuller.

In an attempt to prove his theory of the case during cross-examination of Ms. Fuller, defendant tried to enter into evidence potentially exculpatory statements from two letters Ms. Fuller sent to defendant while he was in pretrial confinement for the domestic assault charge but before he was charged with aggravated sexual

assault. At a Rule 104 hearing, without the jury present, the letters were held inadmissible.

Soon after the trial resumed, defendant's attorney received a note from a man, Ken Harris, which read, "Your client has not done anything to [S.E.]." After an interview with Mr. Harris, it was determined that Ms. Fuller and Mr. Harris had dated for several months after defendant was arrested and awaiting trial and that Ms. Fuller had made potentially exculpatory statements to Mr. Harris. Upon learning this information, defendant again attempted to enter into evidence the statements from Ms. Fuller's letters and, in addition, Mr. Harris's testimony. At a second Rule 104 hearing held outside the presence of the jury, the court again ruled the letters inadmissible and also found Mr. Harris's testimony inadmissible.

Defendant was subsequently found guilty of aggravated sexual assault in violation of 13 V.S.A. § 3523(a)(9) and was sentenced to twenty to forty years in prison. This appeal followed.

I.

Defendant first contends that the evidence presented at trial was insufficient to convict him of aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(9). Section 3253(a)(9) states, in relevant part, that "[a] person commits the crime of aggravated sexual assault if the person commits sexual assault [and] . . . [t]he victim is subjected by the actor to repeated nonconsensual sexual acts as part of the same occurrence." Defendant claims the evidence showed only that "one continuous, very brief episode motivated by a single impulse interrupted" had occurred and, therefore, he could be convicted only of sexual assault in violation of 13 V.S.A. § 3252. Defendant reasons that, because the sexual assault of S.E. in the bedroom lasted only five to ten seconds and then quickly recommenced in the living room after S.E. escaped from the bedroom, the evidence was insufficient to prove "repeated nonconsensual sexual acts."

We recognize the rebuttable presumption that the crime of sexual assault is not a continuous offense and, therefore, each assault constitutes a separate and distinct offense. See *Harrell v. State*, 277 N.W.2d 462, 472 (Wis. Ct. App. 1979) (stating although sexual abuse or sexual gratification may constitute goal of assault, course of defendant's conduct to effectuate single goal is not necessarily single offense because single criminal goal may be effectuated by multiple criminal acts that are separate and distinct offenses); cf. *State v. Dennis*, 537 S.W.2d 652, 654 (Mo. Ct. App. 1976) (rape is not continuous offense);

*Lillard v. State*, 528 S.W.2d 207, 211 (Tenn. Crim. App. 1975) (defendant who raped woman once may not again assault and ravish her with impunity at another time and place). To hold otherwise, "deprecates the heinous and violent nature of each act and the effect each act has upon the victim." *People v. Smith*, 616 N.E.2d 737, 742 (Ill. App. Ct. 1993). As one of our sister states noted:

> Repeated acts of forcible sexual intercourse are not to be construed as a roll of thunder, — an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.

*Harrell*, 277 N.W.2d at 469.

In deciding whether an incident of sexual assault consists of one continuous assault or separate acts, we consider several factors, including: the elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself. See *Smith*, 616 N.E.2d at 741-42.

Admittedly, defendant's conduct in the bedroom and the living room was close in time. There was, however, an intervening event between the two acts — S.E.'s escape from defendant and his flight from the bedroom into the living room. Most importantly, defendant had sufficient time between the commission of the two acts to reflect upon what he was doing and to recommit himself to sexually assaulting the child that had escaped. See *Harrell*, 277 N.W.2d at 470 (even more germane than the time interval is fact defendant formed intent to again assault victim and again applied force necessary to accomplish his purpose).

Defendant's reliance on *State v. Perrillo*, 162 Vt. 566, 649 A.2d 1031 (1994), is misplaced. Perrillo was charged with two violations of 13 V.S.A. § 2602, which proscribes "any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of such person or of

such child." In *Perrillo*, defendant carried his victim to a couch and proceeded to touch the victim's chest and then her genitals. Neither Perrillo nor the victim left the couch during the commission of the crime and, according to the victim, the incident lasted "about a few minutes or so." *Perrillo*, 162 Vt. at 567, 649 A.2d at 1032. Perrillo was found guilty of, one, placing his hand inside the victim's pants and rubbing his hand on her vulva and, two, putting his hand inside the victim's shirt and rubbing her chest. On appeal, Perrillo contended that the sentence of five to ten years (two to five years consecutive on each count) doubled the allowable penalty intended by the Legislature for the crime. See *id*. We reversed his conviction, holding that "[b]ecause a single episode of sexual misconduct ordinarily involves the wrongdoer touching the victim more than once, we do not think the legislature intended to increase the potential sentence for these crimes exponentially depending on the number of touches involved in a single episode of sexual abuse." *Id*. at 567-68, 649 A.2d at 1032.

Unlike Perrillo, defendant in the present case was not charged with violating § 2602 but, instead, was charged with violating § 3253(a)(9), which expressly proscribes "repeated nonconsensual sexual acts." Thus, the holding in *Perrillo* is not dispositive here. Furthermore, unlike the present case, Perrillo's actions happened close in time, they were uninterrupted and occurred in the same geographic location, and there was no evidence suggesting any time between touches for Perrillo to reflect on his conduct and recommit himself to abusing the victim, thereby making it more likely that his actions constituted one continuous lewd act.

In this case, however, there were two sexual assaults. Defendant's argument that his actions were but "one continuous episode motivated by a single impulse interrupted" suggests that, because he was prevented from satisfying his "single impulse" in the bedroom, his actions in the living room should not subject him to additional punishment. The Legislature did not make such distinctions in the statute. The first sexual assault ended when S.E., as he testified, finally got defendant off and he ran into the living room. The second sexual assault occurred in the living room when defendant threw S.E. on the couch and "did it again."

Finally, defendant suggests that the Legislature did not contemplate a conviction of aggravated sexual assault based on a finding of two separate sexual acts on the facts presented in this case and, that, because the act intended to be proscribed by § 3253(a)(9) is ambig-

uous, the rule of lenity requires that doubts be resolved in favor of defendant. See *State v. Sidway*, 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981). We do not find the requisite ambiguity.

"[W]here the meaning of a statute is plain and unambiguous, we are required to enforce it according to its terms, without resort to statutory construction." *In re Hough*, 143 Vt. 15, 19, 458 A.2d 1134, 1136 (1983). The statute distinctly provides that a person commits an aggravated sexual assault when the victim is subjected to "repeated nonconsensual sexual acts as part of the same occurrence." 13 V.S.A. § 3253(a)(9). When a word in a statute is not defined, we are required to give the word its plain and commonly accepted meaning. See *Vincent v. Vermont State Retirement Bd.*, 148 Vt. 531, 535-36, 536 A.2d 925, 928 (1987). "Occurrence" is a synonym for an "event." Black's Law Dictionary 974 (5th ed. 1979). An "event" is "that in which an action, operation, or *series* of operations, terminates," *id.* at 498 (emphasis added), and an "operation" is defined as an "[e]xertion of power," *id.* at 984. Thus, an "occurrence" can be defined as a completed series of exertions of power. The Legislature's intent is clear; repeated sexual assaults during an assaultive course of conduct or series of exertions of power will result in harsher punishment. Because the statute's intent is unambiguous, defendant is not helped by the rule of lenity. See *United States v. Litchfield*, 986 F.2d 21, 22 (2d Cir. 1993) ("Where statutory . . . provisions unambiguously cover the defendant's conduct, the rule [of lenity] does not come into play.").

In conclusion, the language of § 3253(a)(9) is clear and unambiguous. Because the evidence was sufficient to convict defendant for two separate sexual assaults (one in the bedroom and one in the living room), because defendant had sufficient time to reflect and recommit himself to sexually assaulting S.E. after S.E. escaped and fled to the living room, and because S.E. was subjected to separate and additional fear, humiliation, and danger, we conclude there was sufficient evidence to prove that during the same occurrence S.E. was subjected to repeated nonconsensual sexual acts by defendant in violation of § 3253(a)(9).

## II.

Defendant next contends that his right of confrontation, guaranteed under the federal and state constitutions, was abridged by the two evidentiary rulings of the court that excluded Mr. Harris's

testimony and the two statements in Ms. Fuller's letters. See U.S. Const. amend. VI; Vt. Const. ch. I, art. 10.[1] We disagree.

The Sixth Amendment, which encompasses the "right to conduct reasonable cross-examination," *Olden v. Kentucky*, 488 U.S. 227, 231 (1988), is applicable to proceedings in Vermont courts by its incorporation in the Fourteenth Amendment. See *Pointer v. Texas*, 380 U.S. 400, 405 (1965). The United States Supreme Court has declared that cross-examination is potentially the "greatest legal engine ever invented for the discovery of truth," *California v. Green*, 399 U.S. 149, 158 (1970), and has found it to be the "principal means by which the believability of a witness and the truth of his testimony are tested . . . [by] exposure of a witness' motivation in testifying." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Cross-examination forces the witness "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Kentucky v. Stincer*, 482 U.S. 730, 736-37 (1987).

We have also consistently recognized the paramount importance of cross-examination and have permitted the defendant "wide latitude . . . on cross-examination for the purpose of showing who and what the witness is, and that [she] is unreliable, prejudiced, or biased." *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508 (1974). This wide latitude, especially when the evidence consists of the testimony of an individual who might be "motivated by malice, vindictiveness, intolerance, prejudice, or jealousy," allows the defendant "to establish the identity of the witness so that the jury can place the witness in his environment, know who he is, and weigh his evidence." *Raymond*, 148 Vt. at 619-20, 538 A.2d at 165-66 (citations omitted).

■ This "wide latitude," however, has its limits. To raise a successful challenge under the Confrontation Clause, the excluded evidence must be admissible. See V.R.E. 402 (while evidence which is not relevant is not admissible, relevant evidence is admissible, unless it is limited by constitutional requirements, statute, evidentiary rules, or other rules prescribed by this Court); *State v. Patnaude*, 140 Vt. 361, 370, 438 A.2d 402, 405 (1981) (defendant not entitled to weigh his

---

[1] Because he "provides no substantive analysis of the Vermont Constitution, nor . . . set[s] forth any rationale as to how our analysis of this constitutional claim should differ under the Vermont Constitution in comparison with the federal constitution . . . we decline to apply state constitutional analysis" to defendant's claim. *State v. Raymond*, 148 Vt. 617, 619 n.1, 538 A.2d 164, 165 n.1 (1987).

confrontation interest against State's interests unless the evidence offered passes tests of logical and legal relevancy). In determining whether evidence is admissible, the trial judge has broad discretion, see Reporter's Notes, V.R.E. 402, and, therefore may impose reasonable limits on the scope of a defendant's cross-examination if it is "'based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Raymond*, 148 Vt. at 620, 538 A.2d at 166 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); see also *State v. French*, 152 Vt. 72, 80, 564 A.2d 1058, 1062 (1989) (discretion lies in trial judge to weigh such cross-examination, comparing its probative value and its prejudice to witness); V.R.E. 403. "The admissibility of evidence is addressed to the discretion of the trial judge, and this Court will reverse only if the trial judge has abused that discretion." *State v. Goodnow*, 162 Vt. 527, 530-31, 649 A.2d 752, 755 (1994). We now turn to the substance of defendant's appeal.

## A.

During Mr. Harris's deposition, he claimed Ms. Fuller had stated that "[s]he was not sure if it all came down and wasn't sure that it happened at all," in reference to defendant's sexual assault charge.[2] At the beginning of the Rule 104 hearing, defendant stated he wanted to use this statement to impeach Ms. Fuller's credibility. Following a lengthy and confusing colloquy, the court noted that Mr. Harris's statement reporting Ms. Fuller's uncertainty the sexual assault occurred was both irrelevant and cumulative for the purpose of impeaching Ms. Fuller.

After a discussion concerning another alleged statement attributed to Ms. Fuller by Mr. Harris concerning Ms. Fuller's sister, the court returned to the admissibility of the above statement and asked defense counsel "Aren't you trying to attack [S.E.'s] credibility with Donna Fuller's belief or uncertainty as to whether or not this happened?" Defense counsel replied, "Yes." Following another brief discussion, a recess was called to take care of court business. When the hearing resumed the prosecutor noted that the trial court had not

---

[2] Mr. Harris also claimed that Ms. Fuller had told him that Ms. Fuller and her sister did not get along and that one of the reasons for their animosity was that the sister had threatened to take S.E. away from Ms. Fuller and call the child authorities on her due to her alleged drinking problem. The court concluded that this statement was irrelevant and, furthermore, was hearsay. Defendant does not appeal this ruling.

given a "per se" ruling regarding the admissibility of Mr. Harris's testimony, to which defense counsel added that a ruling was needed "Just so it's clear on the record." The court first expressly noted that defendant was offering Ms. Fuller's purported statement through Mr. Harris in order to impeach S.E.'s credibility and then ruled that it was inadmissible because a lay person is not allowed to testify or vouch for the credibility of the victim. Furthermore, the court ruled that, because the statement was hearsay, it was inadmissible to show that the assault did not occur.[3] Defendant now appeals, claiming that he intended to use Mr. Harris's testimony to impeach both the credibility of Ms. Fuller and S.E., and that it was error to exclude Mr. Harris's testimony.

■ First, we note that during the Rule 104 hearing, defendant's offer of proof — vague as it was — underwent substantial change, from impeachment of Ms. Fuller to impeachment of S.E. Notwithstanding the alteration, the court's early ruling that the statement was both irrelevant and cumulative for the purpose of impeaching Ms. Fuller effectively addressed defendant's initial offer. The Court agrees that Ms. Fuller's alleged statement of uncertainty, made to a new boyfriend while defendant was incarcerated, had little if any relevance to her truthfulness. Mr. Harris's hearsay statement lacked context, focus, and specificity. Further, there was substantial and more persuasive other evidence admitted to impeach Ms. Fuller's credibility, including Ms. Fuller's inconsistent statements to the police. We conclude that the trial court did not err in ruling Mr. Harris's testimony inadmissible as to Ms. Fuller.

We now address defendant's second contention that he intended to impeach S.E. with Mr. Harris's testimony. The court excluded Mr. Harris's testimony on the grounds that if an expert witness is not allowed to "comment on the truthfulness of the complaining witness in a child sexual abuse case," *State v. Gomes*, 162 Vt. 319, 328, 648 A.2d 396, 403 (1994), then it is also impermissible to permit a lay person to testify to the same. While we decline to review the court's rationale for finding the statement inadmissible, we conclude that result was correct. Cf. *Perrott v. Johnston*, 151 Vt. 464, 466, 562 A.2d 459, 461 (1989) (Court will affirm judgment which is correct even if grounds stated in support are erroneous).

A witness's credibility may be impeached in a number of different ways. See generally Reporter's Notes, V.R.E. 607. The rules and the

---

[3] Defedant does not appeal this ruling.

common law permit one to attack a witness's credibility through the use of: (1) opinion or reputation evidence, which refers "only to [witness's] character for truthfulness or untruthfulness," V.R.E. 608(a); (2) certain prior convictions and misconduct of the witness, see V.R.E. 609; V.R.E. 608(b); (3) certain prior inconsistent statements made by the witness, see V.R.E. 613; and (4) evidence "showing personal bias, financial interest, . . . lack of capacity to observe or remember, or by contradictory evidence or self-contradictory cross-examination." Reporter's Notes, V.R.E. 607.

Defendant contends that, because S.E.'s mother was not sure the crime took place, S.E.'s character for truthfulness was therefore impugned. Ms. Fuller's doubts as to whether the sexual assault occurred, offered through the testimony of a third person, is not the type of evidence normally admitted for impeachment purposes. Her alleged statement was not an assertion of an opinion on S.E.'s character for truthfulness. The statement offered through Mr. Harris is hearsay and only relevant if offered for the truth of the matter asserted. See V.R.E. 801(c). Therefore, the court did not err in excluding the inadmissible impeachment evidence. See *Van Arsdall*, 475 U.S. at 679 (Confrontation Clause guarantees *opportunity* for effective cross-examination, not cross-examination effective in whatever way and to whatever extent defense might wish).

### B.

Defendant also contends that the court erred in ruling that the two statements contained in Ms. Fuller's letters were inadmissible.[4] The first of Ms. Fuller's statements that defendant wanted to introduce was:

Now with this court thing I'm really scared. I don't know how I'm going to get through the next days or weeks, I am intimidated by [the prosecutor] to the extent when I think about it my ears start ringing and I feel like I'm having a

---

[4] Defendant also wanted to enter into evidence two other statements from Ms. Fuller's letters: (1) "I'm sorry about not getting in touch with [defendant's investigator] on Monday. [I]t wasn't because I didn't want to, it was because I couldn't leave the house, I finally had [S.E.] call and make the arrangements for me and, then I had a set time and knew I had to go," and (2) "I don't think it's right to lock someone up for having a fight with [their] spouse." At the first Rule 104 hearing, however, defendant decided not to use these two statements and does not allege any error in regard to these two statements.

panic attack, I can just imagine how you feel. It's your life on the line. I put you there and now I have to try to get you out, what a mess. I wish we could either turn back the clock or zoom it ahead and have this over.

The second statement was "I don't know why I'm feeling sorry for myself. I guess it's because of this great big huge mess that's bigger than the world and I'm scared because I don't understand the law and I'm afraid of what [the prosecutor] and the judge will do to me for lying." Defendant offered the statements to impeach the credibility of Ms. Fuller and to show that Ms. Fuller had felt intimidated by the prosecutor.

At the Rule 104 hearing on this offer, evidence was presented that Ms. Fuller had been a hostile witness in the prosecution of defendant's aggravated domestic assault charge, and that this had provided her with the opportunity to form an opinion of the prosecutor. Furthermore, it was shown that Ms. Fuller had not spoken with the prosecutor about defendant's aggravated sexual assault charge at the time the letters were written. The court found that: (1) Ms. Fuller never had a conversation with the prosecutor named in the letters; (2) if the letters were admitted, the prosecution would be permitted to bring into evidence defendant's prosecution for aggravated domestic assault to explain to the jury how Ms. Fuller knew the prosecutor; and (3) defendant did not bring these letters up until the middle of the trial. Thus, the court concluded that the statements were inaccurate and that the potential prejudicial effect to defendant far outweighed their probative value. Furthermore, the court noted that defendant had sufficient admissible evidence with which to impeach Ms. Fuller, including Ms. Fuller's prior inconsistent statements to the police and defendant's investigator. The statements were, therefore, ruled inadmissible.

We agree with defendant that the court erred in finding the statements inadmissible. The fact that Ms. Fuller never had a conversation with the prosecutor goes to the weight of the evidence, not its admissibility. Second, if defendant wanted to take a recognized risk that the State would use his prior conviction to explain the impeachment evidence, there is no rule or statute that bars him from exposing his prior conviction to the jury. Finally, there was no requirement to disclose impeachment evidence to opposing counsel prior to trial.

While we conclude that defendant should have been permitted to impeach Ms. Fuller's credibility with her letters, we must determine

whether the court's ruling amounted to harmless error. See *Van Arsdall*, 475 U.S. at 684; V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). The "harmless error" rule has been restated as follows:

> Harmless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error. Thus, analysis under the harmless error doctrine focuses on the evidence of guilt present in the record.

*State v. Wright*, 154 Vt. 512, 519-20, 581 A.2d 720, 725 (1989). To find harmless error, we treat the damaging potential of the excluded impeachment evidence as fully realized, and determine whether the error was harmless beyond a reasonable doubt. See *Van Arsdall*, 475 U.S. at 684.

To begin with, the statements in the letters had limited probative value at best. At the Rule 104 hearing, regarding the statement "I'm afraid of what [the prosecutor] and the judge will do to me for lying," Ms. Fuller testified that her fear stemmed from allegedly false, exculpatory statements she intended to make to defense attorney's private investigator and not from the inculpatory statements she had already made to the police. Second, regarding the statement she felt intimidated by the prosecutor, Ms. Fuller testified that at the time she had written the letters she had not talked to the prosector about the case but that she had formed her opinion of him during defendant's trial for domestic abuse. In addition, in response to a question on recross-examination concerning whether he thought Ms. Fuller concocted the sexual assault allegations, defendant conceded that he did not think Ms. Fuller invented these allegations. This concession was in direct opposition to defendant's theory of the case that Ms. Fuller had fabricated the sexual assault. It also strengthened Ms. Fuller's credibility and obviated defendant's use of the proffered evidence to impeach Ms. Fuller's credibility.

■ While defendant's concession concerning Ms. Fuller's role in the allegations confronting him does not specifically refute her testimony regarding his alleged confession to her, defendant was permitted at trial to impeach Ms. Fuller's credibility with other evidence showing that she had made several prior inconsistent statements about the sexual assault. Given the minimal probative

value of the excluded evidence, defendant's concession that Ms. Fuller did not fabricate the allegations, defendant's opportunity to impeach Ms. Fuller's credibility with other evidence, and the other evidence of defendant's guilt, it is clear beyond a reasonable doubt that defendant would have been found guilty even if the proffered evidence had been admitted. See *Van Arsdall*, 475 U.S. at 686.

Defendant also contends that the court's two evidentiary rulings abridged his state constitutional right to call for evidence in his favor. See Vt. Const. ch. I, art. 10 (in all prosecutions for criminal offenses, a person hath a right to call for evidence in his favor). This assertion appears in his brief "unaccompanied by facts, law, or reasoning." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 152, 636 A.2d 325, 329 (1993). Because we will not search the record for errors inadequately briefed, see *Bishop v. Town of Barre*, 140 Vt. 564, 579, 442 A.2d 50, 57 (1982), we do not address this claim.

*Affirmed.*

**Dooley, J.,** dissenting. At its heart, this case was a credibility contest between defendant, who testified, and his thirteen-year-old step-son, who testified against him. The State, however, had another evidentiary "ace" in Donna Fuller's testimony that when she confronted defendant, he confessed to the sexual assault. Thus, defendant had no chance to prevail unless he could impeach Donna Fuller's credibility. Defendant's counsel arrived at two main avenues of impeachment, neither of which reached the jury because the trial court found inadmissible the evidence on which defendant relied. Because I believe the rulings were erroneous and could not together be found harmless under the proper standard of review, I respectfully dissent from the majority opinion affirming defendant's conviction.

The majority has analyzed in detail the exclusion of the excerpts of the letters, concluding that the refusal to admit them was erroneous, but in the context of all the evidence was harmless error. If this had been the only exclusion, I would probably agree that this error alone should not warrant a new trial. The exclusion of the letters, however, was the least prejudicial of the two errors.

The most important excluded testimony was that of Ken Harris, who came forward during the trial because he believed defendant was not guilty. Ken Harris dated Donna Fuller for several months after defendant was arrested and would have testified that she expressed doubt about whether defendant committed the sexual assault for which he was being tried. The impeachment value of this evidence was

obvious because Donna Fuller testified that she believed her son[1] and that defendant confessed to her. The majority has concluded that the trial judge acted within her discretion in excluding the evidence.[2]

As the majority recognizes, exclusion of this evidence can be justified only if its probative value is clearly outweighed by other considerations that make it inappropriate for the evidence to reach the jury. See V.R.E. 403. Therefore, the majority begins by finding that the evidence had only "little relevance" to Ms. Fuller's truthfulness. I believe this assessment of probative value is clearly wrong.

Apart from the victim's testimony, the most damning evidence against defendant was Ms. Fuller's testimony that defendant confessed to her and that she believed her son. Defendant could prevail in this trial only if the jury disbelieved Ms. Fuller, at least in part. The testimony of Ken Harris offered a reason to disbelieve the testimony. If, as Ken Harris would testify, Ms. Fuller expressed doubt about defendant's guilt to him, a neutral third party, can it be true that she believed her son and that defendant had confessed to her? The Harris testimony would have created a serious discrepancy from which the jury could infer that Ms. Fuller was not being truthful.

I also believe that the grounds the majority asserts for excluding the evidence are wrong. Impeachment evidence can be excluded for reasons like "'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. Cartee*, 161 Vt. 73, 77, 632 A.2d 1108, 1111 (1993) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). None of these reasons apply here to evidence that could have been presented quickly and for which the relevance is obvious. Indeed, given the long arguments and discussions the proposed testimony engendered, it would have been quicker to present it than it was to exclude it.

Nevertheless, the majority holds that the testimony could be excluded as cumulative. Rule 403 authorizes exclusion because of

---

[1]The State emphasizes both here and in the trial court that Ms. Fuller's belief is irrelevant and inadmissible. Despite that position, the prosecutor introduced her belief during her direct examination while questioning her about her initial denial to the police. Ms. Fuller first testified that she denied that her son had reported that defendant had sexually assaulted him. The prosecutor then asked "You didn't believe it happened, right?" She answered: "I believe that it had happened."

[2]After a long and difficult-to-follow argument, the trial court ruled that defendant was really trying to attack the credibility of the victim through Ms. Fuller and ruled that Harris's testimony was inadmissible for that purpose. That argument was not made on appeal, and I would not reach it. As the majority holds, the defendant preserved his argument that the Harris testimony was admissible to impeach Ms. Fuller.

"*needless* presentation of cumulative evidence." Unless we are going to impose some sort of impeachment quota, we cannot label the Harris testimony as cumulative and certainly cannot call it "needless" in view of the testimony of Ms. Fuller. The fact that defendant had some ability to impeach Ms. Fuller on other grounds — that she initially gave a different story to the police and had a motive to fabricate the accusation against defendant — does not make it cumulative. See, e.g., *United States v. Foster*, 982 F.2d 551, 554-55 (D.C. Cir. 1993) (fact that defendant could show that key witness for prosecution gave incomplete statement to police does not justify excluding defendant from showing witness also gave incomplete testimony at preliminary hearing). Oddly, the majority does not find cumulative the letters even though the content goes directly to the inconsistencies in her stories to the police and prosecutor, a subject explored in other evidence. Yet, it finds cumulative a different inconsistency raised by the testimony of an ostensibly neutral third party.

In my view, this case is controlled by *Cartee* and *State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985). As we said in *Cartee*, where the witness's "credibility was a pivotal issue bearing on defendant's guilt," the trial court should be particularly cautious in exercising its discretion to exclude defendant's impeachment evidence. 161 Vt. at 77, 632 A.2d at 1111.

Because of our harmless error rule, it makes little difference whether we find the exclusion of Harris's evidence to be a violation of the Confrontation Clause of the federal constitution or an erroneous exclusion of relevant evidence, not excludable under Rule 403. See V.R.E. 402 (relevant evidence is admissible except as limited by the Constitution, statute or rule). We can hold an error harmless only if we can find beyond a reasonable doubt that the error did not affect the result. See *State v. Carter*, 164 Vt. 545, 555, 674 A.2d 1258, 1265 (1996) (harmless error standard is the same for both constitutional and nonconstitutional errors). Because of the significance and weight of Ms. Fuller's testimony, and the weight that the jury could have attached to the Harris testimony, either individually or in combination with the excerpts from Ms. Fuller's letters to defendant, I cannot conclude beyond a reasonable doubt that the errors in exclusion of evidence did not affect the result.

Accordingly, I dissent.