### State of Vermont v. Samuel Maduro

[816 A.2d 432]

No. 01-232

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 25, 2002

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

**Morse, J.** Defendant Samuel Maduro, also known as Samuel Penney, appeals from the district court's judgment of conviction following a jury trial on charges of delivery of cocaine in violation of 18 V.S.A. § 4231(b)(3) and conspiracy to sell cocaine in violation of 13 V.S.A. § 1404(a). He argues on appeal that the trial court improperly admitted evidence of prior uncharged bad acts as direct evidence of the conspiracy, as well as evidence of intent on the delivery charge, and that the court erroneously denied his motion for judgment of acquittal on the charge of delivery. Because we agree that the evidence was erroneously admitted, we reverse and remand for a new trial.

The charges at issue stem from events occurring in the spring of 1999. The affidavit submitted in support of the charges alleged that,

between February 1999 and May 1999, defendant engaged in a conspiracy to sell cocaine. As laid out in the affidavit, the conspiracy consisted of the defendant providing materials such as crack cocaine, cash and scales to a juvenile, K.M., to hold for him when police searched his apartment pursuant to conditions of his furlough status, and included, on one occasion, asking K.M. to give crack cocaine to an individual in exchange for cash at defendant's apartment while he was not there. The affidavit also alleged that on May 1, 1999, defendant delivered to K.M. roughly seventy-seven grams of crack cocaine to hold for him, which K.M. provided to the police when they contacted her in the course of investigating defendant's activities.

Defendant was charged with the above crimes in June 1999. A little less than a month before the case was set to go to trial in September 2000, the State disclosed an additional witness it intended to call who would provide "prior bad act" evidence. Specifically, the State intended to call Keith Merrow to testify that defendant provided him with powder and crack cocaine at their common workplace to sell between January and May 1999. Defendant moved in limine to exclude the evidence. In response, the State argued that the evidence was not only admissible to show intent with regard to the conspiracy charge, but was also direct evidence of the conspiracy itself because Merrow also formed part of that conspiracy. The court heard argument on the motion the first day of trial and denied defendant's motion. The court decided to let the evidence in, both as direct evidence of the conspiracy itself and for the purpose of showing plan and intent on the conspiracy offense.

The trial resulted in a hung jury on both charges. Prior to defendant's new trial, he again moved to exclude Merrow's testimony. In response, the State simply renewed its previous arguments in opposition to defendant's motion. At no time, however, between the first and second trial did the State attempt to amend its information charging defendant with conspiracy in any way, nor did it bring any additional charges against defendant. The trial court issued an order indicating the motion would be taken up at the beginning of trial. Following a short discussion revisiting its original ruling, the court indicated that it would not change the ruling and thus would make the same ruling on defendant's new motion.

Accordingly, Merrow testified at trial that he had met defendant in jail and then later worked with him for the same employer. He stated that defendant approached him at work and asked if he would sell cocaine for him. Merrow agreed to do so and worked out an

arrangement in which he found customers, found out how much of the drug they wanted, and then procured it from defendant. He would then receive a percentage of the sale. Merrow stated that defendant did not know who his customers were and that he never brought the customers to defendant's apartment. He then testified that he remembered seeing a young girl at defendant's apartment on some of the occasions when he would visit to pick up drugs. He also testified, however, that K.M. — presumably the young girl, although never directly identified by Merrow — did not participate in any of his transactions, did not provide him with drugs or money, and was never a witness to the transfers from defendant.

Following Merrow's testimony, the trial court determined that the whole of his testimony went to the charged conspiracy and thus there was no need for any limiting instructions to the jury at that point in the trial. Defendant objected, and the court overruled his objection. At the close of trial, during the jury charge, the court affirmatively instructed the jury that it could consider Merrow's testimony as direct evidence of the conspiracy charge involving K.M. It also added, however, that, if the jury determined that Merrow's testimony was related to a separate uncharged conspiracy, it could still consider the evidence

> as proof of the opportunity to commit the crimes of which the defendant is charged; the defendant's intent to commit the crimes of which he is charged; the defendant's preparation for and plan to commit the crimes of which he is charged; the defendant's knowledge and absence of mistake in committing the crimes he is accused of.

After the charge to the jury, defendant objected to the above-quoted portion, requesting that the court limit the instruction to the conspiracy charge and direct the jury not to consider it as evidence of opportunity, etc., with regard to the delivery charge. Defendant argued that the testimony did not demonstrate those things with respect to the charged delivery, and that it also was unfairly prejudicial with respect to the delivery charge. The court declined to do so. Defendant now appeals to this Court.

Defendant argues that the trial court's decision that the evidence was admissible as direct evidence of the charged conspiracy, as well as its ultimate admission of the evidence for somewhat more limited purposes under V.R.E. 404(b) on the delivery charge, was reversible error. More specifically, defendant first argues that the trial court erroneously determined that V.R.E. 404(b) did not apply to the

evidence with regard to the conspiracy charge. He contends that the testimony was *not* direct evidence of the charged conspiracy, but was instead evidence of a separate uncharged conspiracy. In other words, defendant argues that the trial court erroneously determined that the Merrow testimony was directly relevant as res gestae evidence with respect to the charged conspiracy.

We have previously noted that "[c]rimes which form a body of evidence relating to the events surrounding the crime of which a defendant is charged are part of the res gestae." *State v. Norton*, 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986). As such, they do not require a limiting instruction that would otherwise accompany evidence of uncharged bad acts. *Id.* As another court has noted, res gestae evidence "is generally linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime," and "is not subject to the general rule that excludes evidence of prior criminality." *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994) (internal quotation marks and citations omitted) (holding three separate statements threatening to kill other people, made in the course of killing another individual, each constituted part of res gestae of a single incident of murder, as opposed to separate uncharged bad acts). In fact, the trial court explicitly relied on *Quintana* when it concluded that Merrow's testimony described acts that formed part of the charged conspiracy.

The determination of what acts constitute the res gestae of a single conspiracy, as opposed to multiple separate conspiracies, presents special challenges for a court, however. Cf. 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.5(a), at 89 (1986) ("The breadth of the law of conspiracy makes it subject to prosecutorial and judicial abuse.") (footnotes omitted); see also *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992) (court is "mindful that the conspiracy doctrine is inherently subject to abuse and that the government frequently uses conspiracy to cast a wide net that captures many players"). The United States Supreme Court addressed the problem and the ensuing consequences of conflating multiple conspiracies with a single conspiracy in *Kotteakos v. United States*, 328 U.S. 750, 769-77 (1946), a case in which the government charged a single conspiracy involving thirty-two defendants. It noted the confusion of "the common purpose of a single enterprise with the several, though similar, purposes of numerous separate adventures of like character," in a scenario involving "separate spokes meeting in a common center, though ...

without the rim of the wheel to enclose the spokes." *Id.* at 769, 755 (internal quotation marks omitted).

Notably in this case, the charge involves only defendant, and the affidavit in support of the charge names only K.M. as a coconspirator. No mention is made of defendant's activities with Merrow in the charging documents. Cf. *Evans*, 970 F.2d at 674 n.13 ("The government has the power to define the scope of the conspiracy as broadly as it thinks the facts will justify, but if it fails to prove the conspiracy *as charged*, it will fail to obtain a conviction."). Nevertheless, the court determined that the activities formed part of the conspiracy and thus allowed the evidence in directly. We cannot agree.

When determining whether one or multiple conspiracies exist, courts have looked for the existence of "(1) a common goal, (2) interdependence among the participants, and (3) overlap among the participants." *United States v. Portela*, 167 F.3d 687, 695 (1st Cir. 1999) (footnote ommitted); see also *Evans*, 970 F.2d at 668 (noting more general elements of conspiracy). In a "wheel" conspiracy such as one at issue here, where the State argues defendant formed the hub, and K.M. and Merrow formed the spokes, there must be a "rim" for there to be one conspiracy. See *United States v. Rosnow*, 977 F.2d 399, 405 (8th Cir. 1992) (" '[T]hose people who form the wheel's spokes must have been aware of each other and must do something in furtherance of some single, illegal enterprise.' ") (quoting *United States v. Levine*, 546 F.2d 658, 663 (5th Cir. 1977)); *United States v. Kenny*, 645 F.2d 1323, 1334-35 (9th Cir. 1981) (to establish a rim, "the circumstances must lead to an inference that some form of overall agreement exists."); see also 2 LaFave & Scott, *supra*, § 6.5(d)(2), at 100 (noting wheel conspiracy "is by its nature less likely to support the conclusion that the parties had a community of interest" so as to support a single conspiracy charge). The existence of the "rim" can be shown through evidence that the conspirators "intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." *Evans*, 970 F.2d at 671. Alternatively, the State can demonstrate that the conspirators "had reason to believe that their own benefits were dependent upon the success of the entire venture." *Kenny*, 645 F.2d at 1335 (internal quotation marks omitted).

> Establishing "interdependence" among the participants requires determining whether the activities of one aspect of the scheme are necessary or advantageous to the success of

> another aspect of the scheme. Each individual must think the aspects of the venture interdependent, and each [participant's] state of mind, and not his mere participation in some branch of the venture, is key.

*Portela*, 167 F.3d at 695 (internal quotation marks and citations omitted). An agreement among coconspirators need not be explicit, however, and may be inferred from the participants' acts or other circumstantial evidence. See *Kenny*, 645 F.2d at 1335.

■ Nowhere in its proffer of Merrow's testimony did the State point to evidence of such factors as listed above. Furthermore, Merrow's and K.M.'s testimony at trial at best established that they simply recognized one another from defendant's apartment. It did not establish an awareness of each other's participation in any way, general or otherwise, in the charged conspiracy. And the State did not offer to prove, nor did the testimony demonstrate, that Merrow and K.M. were interdependent in any way, or shared a community of interest. Thus, the wheel in this case lacks a rim to connect the two spokes to support one conspiracy instead of two. Cf. *Rosnow*, 977 F.2d at 406 (evidence insufficient to show single conspiracy instead of several). Defendant's activities with Merrow were not part and parcel of the charged conspiracy involving K.M. as determined by the trial court. Therefore, Merrow's testimony was not relevant as direct evidence of defendant's conspiracy with K.M.

■ Because the trial court improperly admitted the Merrow testimony as direct evidence of the charged conspiracy, and specifically instructed the jury that they could use it for that purpose, we must reverse defendant's conviction on that charge and remand for a new trial. In essence, the admission, in combination with the court's instruction, allowed the jury to convict defendant on the conspiracy charge based on his activities with Merrow — a separate and *uncharged* conspiracy — as opposed to his activities with K.M. Cf. *Rosnow*, 977 F.2d at 407 ("When the proof at trial reveals the existence of more than one conspiracy, the adequacy of the trial judge's instructions are of critical importance in evaluating the likelihood [that] confusion or prejudice resulted from transference of guilt from one conspiracy to another.") (internal quotation marks omitted; alteration in original).

■ This resolution does not dispose of the delivery charge, however. The question remains whether the trial court also improperly admitted

the evidence under V.R.E. 404(b) with respect to the charge of delivering crack cocaine to K.M. We briefly address defendant's challenge to the sufficiency of the evidence supporting the charge, however, as resolution in defendant's favor would obviate the potential for remand on the evidentiary issue. Cf. *State v. Durenleau*, 163 Vt. 8, 10, 15, 652 A.2d 981, 981, 984 (1994) (reaching sufficiency issue first because it disposed of case, and double jeopardy prevented retrial). Defendant contends that the State has failed to prove that he had possession of the cocaine originally, prior to delivering it to K.M. K.M. testified, however, that defendant physically gave it to her to hold for him while she was visiting him in his apartment in early May. This sufficiently establishes that it was in defendant's possession before he transferred it to K.M. To the degree that defendant challenges K.M.'s reliability as a witness, such determinations are matters for the fact finder. See *State v. Couture*, 169 Vt. 222, 227, 734 A.2d 524, 528 (1999).

■ We now turn to defendant's V.R.E. 404(b) argument. As described above, the State originally offered the Merrow testimony under V.R.E. 404(b) only to show intent on the conspiracy charge. In response to defendant's motion in limine to exclude the evidence, the trial court determined that, in addition to coming in as direct evidence, it could alternately be admitted to show both plan and intent on the conspiracy charge. At defendant's retrial, it renewed its ruling. Although the Morrow testimony went only to the conspiracy charge and not to the delivery charge, the court issued no limiting instruction whatsoever at the time Merrow testified. Furthermore, when it came time to charge the jury, the court instructed that the Merrow testimony could not only be used with respect to the delivery charge — going beyond its original ruling in that respect — but that it could be used to show opportunity, preparation, knowledge and lack of mistake, in addition to just plan and intent. Defendant objected.

As we have emphasized, when uncharged bad acts are at issue:

> The State has the burden to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed by its prejudicial effect. The evidence must relate to an element of the offense or the defense *that is genuinely in issue.*

*State v. Winter*, 162 Vt. 388, 393, 648 A.2d 624, 627 (1994) (citations omitted; emphasis added).

Arguably defendant placed his opportunity to possess the seventy-seven grams of crack — a substantial amount — in issue by advancing the theory that the possibility of frequent, random searches of his apartment resulting from his furlough status would preclude him from having drugs on the premises. Additionally, defendant advanced the theory that the crack belonged to the boyfriend of K.M.'s mother and not him. Nevertheless, the State never linked the Merrow testimony to dispelling either of these theories of defense to the delivery charge. See *State v. Ryan*, 135 Vt. 491, 497, 380 A.2d 525, 529 (1977) ("Where there is doubt about the probative value of the prior crime evidence, that doubt should be resolved in favor of the defendant and the evidence ruled inadmissible."). And the court's charge did not limit its use to these considerations, but rather allowed the jury to use the testimony for a laundry list of purposes on both charges.

Because of the open-ended instruction, which was varied from its original ruling that the evidence would be admitted only to show intent and plan to commit the offense of conspiracy, we cannot affirm. The court's admission cannot be said to be harmless with respect to the delivery charge given that the only evidence in support of that charge is K.M.'s testimony that the crack she gave to the police was provided to her by defendant. See *State v. Fuller*, 168 Vt. 396, 408, 721 A.2d 475, 484 (1998) (harmless error analysis focuses on the evidence of guilt in the record absent the error). Thus, we cannot say beyond a reasonable doubt that Merrow's testimony to repeated drug deals with defendant involving crack and powder cocaine did not contribute to the verdict. See *State v. Carter*, 164 Vt. 545, 553-57, 674 A.2d 1258, 1264-66 (1996) (adopting the standard applied in *Chapman v. California*, 386 U.S. 18 (1967), for constitutional and nonconstitutional error and noting standard was a restatement of principle that error "could not be harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction") (internal quotation marks and citation omitted); see also *Fuller*, 168 Vt. at 408, 721 A.2d at 484 ("Harmless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error.") (internal quotation marks and citation omitted).

*Reversed and remanded for proceedings consistent with this opinion.*