NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 41

No. 21-AP-263

| | |
|---|---|
| Sean Beatty | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| | |
| Kathryn Keough | May Term, 2022 |

Samuel Hoar, Jr., J.

Sean Beatty, Pro Se, Colchester, Plaintiff-Appellee.

Peter F. Langrock of Langrock Sperry & Wool, LLP, Middlebury, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.   **REIBER, C.J.**   Defendant appeals from the issuance of an anti-stalking order against her.  She raises procedural and substantive challenges to the court's decision.  We agree with defendant that the evidence does not support the trial court's conclusion that she engaged in "two or more acts over a period of time, however short" as required by 12 V.S.A. § 5131(1)(A).  We therefore reverse.

¶ 2.   Plaintiff and defendant work in the same location.  Defendant is the wife of plaintiff's employer.  In late July 2021, plaintiff sought relief under 12 V.S.A. § 5133 following a workplace confrontation with defendant.   The court granted plaintiff temporary relief

under § 5134. It held a final hearing in August 2021, erroneously believing that defendant had been served with the temporary order. Plaintiff testified at the hearing and the court issued a final order in plaintiff's favor. Defendant then moved to strike the order for lack of service and, following another hearing, the court vacated the final order, reopened the case, and extended the temporary order that had been in place previously.

¶ 3. A new merits hearing was held in October 2021. Plaintiff described defendant as aggressive and hostile. He testified that in late July 2021, defendant wrote the word "abuser" on a large piece of waxed paper and pressed it in his face. Defendant screamed and acted aggressively during this confrontation. When plaintiff pulled the paper down, defendant hit him in the chest. Plaintiff then left the scene and headed outside to his vehicle. Defendant followed him, hollering and finger-pointing. Plaintiff got into his work truck and defendant "spit[] in his direction." Plaintiff described past confrontations with defendant as well, including one where she used her car to block his truck and he had to threaten to call the police to get her to move. Defendant denied hitting or spitting at plaintiff. She said that she wrote the word "abuser" on a post-it note and held it up. She denied writing it on larger paper and pushing it in plaintiff's face.

¶ 4. The court made findings on the record at the close of the hearing. It credited plaintiff's version of events. It found that the parties engaged in an escalating verbal dispute at the conclusion of which defendant made a sign on waxed paper that said "abuser" and pressed it in plaintiff's face. When plaintiff went to remove the sign, defendant responded by striking plaintiff in the chest. Plaintiff then went to the parking lot and defendant followed him there. During all of this, defendant was using language that "did not necessarily convey threats of violence, but certainly [was] not friendly and [was] intended to intimidate emotionally, if not physically." Defendant then spit at plaintiff in the parking lot.

¶ 5.     The court concluded that there were two separate incidents, albeit relatively close in time, where defendant behaved in a way that she knew or should have known would place a reasonable person in fear of harm, and this satisfied the statutory definition of stalking. The court thus issued a final anti-stalking order in plaintiff's favor. This appeal followed.

¶ 6.     On review of the court's discretionary decision, we will uphold "its findings if supported by the evidence and its conclusions if supported by the findings." McCool v. Macura, 2019 VT 85, ¶ 6, 211 Vt. 263, 224 A.3d 847 (quotation omitted). We leave it to the factfinder to assess the credibility of witnesses and weigh the evidence. See Cabot v. Cabot, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."). We conclude that the evidence here was insufficient as a matter of law to show a "course of conduct" as defined in 12 V.S.A. § 5131(1)(A).

¶ 7.     The term "stalk" means, in relevant part, "to engage purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to . . . fear for his or her safety." Id. § 5131(6)(A). A " '[c]ourse of conduct' means two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property." Id. § 5131(1)(A) (emphasis added); see also 13 V.S.A. § 1061(1)(A) (providing same definition of "course of conduct" for purposes of criminal stalking law). The term "threaten" requires "a communicated intent to inflict physical harm on another person," Hinkson v. Stevens, 2020 VT 69, ¶ 46, 213 Vt. 32, 239 A.3d 212, although the threat need not be "express or overt." 12 V.S.A. § 5131(1)(B).

¶ 8.    We held in Hinkson that "[b]ecause the Legislature has applied both civil and criminal sanctions to the same definition of stalking, we interpret this civil statute as if it were a criminal statute." 2020 VT 69, ¶ 30.  We thus construe the statute "narrowly." Id. ¶ 25.  This approach "ensures that statutes provide fair warning of the legal consequences for committing certain, defined acts." Id. ¶ 31 (quotation omitted).

¶ 9.    Other courts employ language similar to that found in Vermont's civil stalking law and several have considered the meaning of the "two or more acts" requirement with respect to acts close in time.  See generally P. Kussmann, Validity, Construction, and Application of State Civil Stalking Statutes, 14 A.L.R.7th Art. 4 (2016) (collecting cases).  As the ALR explains:

> Stalking cannot consist of a single, isolated act because it involves a series of contacts aimed against a particular person causing that person fear or significant emotional distress.  Consequently, civil stalking statutes define "stalking" as a course of conduct consisting of two or more acts directed at a specific person, and a single contact, no matter how offensive or threatening, will not support the entry of a civil stalking protection order.  Multiple contacts can occur on a single day, however, as long as they are sufficiently distinct.

Id. § 2 (citations omitted).

¶ 10.    In Hosley v. Seaman, No. 07CA2962, 2008-Ohio-1695  (Ct. App. Apr. 4, 2008), for example, a court found a "pattern of conduct" sufficient for a civil stalking protection order where a defendant touched a minor child several times in the course of one evening. Id. ¶ 13.  The plaintiff alleged in that case that, on the evening in question, the defendant entered a room where the child was using a computer and touched her inappropriately.  He then left the room.  "After a period of time," he reentered the room and touched the child again. Id. ¶ 4.  He left and reentered the room a third time and touched her again.  The trial court granted the stalking order, finding that three separate incidents occurred on the evening in question.

4

¶ 11. On appeal, the defendant argued that there was no "pattern of conduct," defined by statute as "two or more actions closely related in time." Id. ¶ 11 (citation omitted). The court found that "[a] pattern of conduct requires only two or more actions closely related in time" and the law "[did] not require that the pattern of conduct be proven by events from at least two different days." Id. ¶ 12. Citing a criminal case, it held that "a pattern of conduct can arise out of two or more events occurring on the same day, provided that there was a sufficient interval between them." Id. The court reasoned that because the defendant touched the minor "on three occasions, separated by periods of time, on the same evening," this was "sufficient to establish a pattern of conduct" as required by law. Id. ¶ 13.

¶ 12. An Ohio appeals court revisited this issue in Echemann v. Echemann, No. 17-15-19, 2016-Ohio-3212 (Ct. App. May 31, 2016). It explained that the phrase "closely related in time" was not defined by law and reasoned that "[i]n failing to delimit the temporal period within which the two or more related actions or incidents must occur, the statute leaves the matter to be determined by the trier of fact on a case-by-case basis." Id. ¶ 35 (quotations omitted). It emphasized that "the trier of fact should consider the evidence in the context of all the circumstances of the case" and that "[d]epending upon the particular circumstances, a pattern of conduct can arise out of two or more actions or incidents occurring on the same day or over a period of years." Id. (quotation and citation omitted).

¶ 13. Florida courts have considered similar questions as well. Under Florida law, "two or more acts that are part of one continuous course of conduct are legally insufficient to qualify as separate instances of harassment" for purposes of a stalking injunction. Sutton v. Fowler, 332 So. 3d 1001, 1005 (Fla. Dist. Ct. App. 2021) (quotation omitted). Florida law defines a "course of conduct" as "a pattern of conduct composed of a series of acts over a period of time, however

short, which evidences a continuity of purpose." Id. (quotation omitted). "A course of conduct requires multiple acts that are separated by time or distance." Id. (quotation omitted). The Sutton court emphasized that Florida law "does not allow the trial court to enter injunctions simply to keep the peace between parties who, for whatever reason, are unable to get along and behave civilly towards each other." Id. at 1006 (quotation omitted).

¶ 14. The court applied this standard in Levy v. Jacobs, 69 So. 3d 403 (Fla. Dist. Ct. App. 2011), to a case involving a fistfight. The parties lived in the same condominium building. As part of an argument outside the building, the defendant punched the plaintiff. The plaintiff then entered the building and conversed with the desk clerk about calling the police. Between five to seven minutes later, the defendant entered the building, screaming and cursing. He grabbed the plaintiff's neck and threw him on the floor. The plaintiff sought "an injunction against repeat violence," which requires "at least two qualifying incidents of violence" or stalking." Id. at 404-05.

¶ 15. The court explained that "[m]ultiple acts stemming from a single violent incident do not constitute 'repeat violence' under [Florida law] where those acts [are] not separated by time or distance." Id. The plaintiff alleged "that the attack outside the building and the attack inside the lobby were two separate incidents of violence." Id. at 404. The defendant argued that "there was only one continuous incident of violence, which was not separated by time or distance." Id. The trial court found two separate acts as "there was a break of five minutes between the incidents and one occurred outside the lobby and the second one inside the lobby." Id.

¶ 16. The appeals court upheld this conclusion. It distinguished another case, Darrow v. Moschella, 805 So. 2d 1068 (Fla. Dist. Ct. App. 2002), where the parties were involved in an escalating confrontation on a golf course. Id. at 405. The defendant in that case bumped another

golfer in the chest, approached him again and touched the plaintiff with his hat, and then hit the plaintiff multiple times after the plaintiff knocked the defendant's hat off. The court there explained that there was only one "incident" of violence in that case as "[t]he stages of [the defendant's] confrontation with [the plaintiff] were not separated by time or distance" and the two men had never encountered one another before. Darrow, 805 So. 2d at 1069. In the case before it, by contrast, even though "the two attacks occurred on the same premises, the first occurred outside the building and the second occurred inside the building." Levy, 69 So. 3d at 405. There was also "a temporal break of approximately five minutes between the incidents," which was sufficient to allow the defendant "time to pause, reflect, and form a new intent before the second attack." Id. (citing Clinton v. State, 970 So. 2d 412, 414 (Fla. Dist. Ct. App. 2007) (holding that no double jeopardy violation occurred where defendant stabbed victim, victim walked towards convenience store and collapsed, and defendant then stabbed victim again)). The court thus found sufficient evidence to support the trial court's finding that "there were two separate incidents of violence . . . rather than a single continuous incident of violence." Id.

¶ 17. As indicated above, the Levy court referenced a criminal case, which addressed whether there had been a sufficient temporal break to allow a defendant to reflect and form a new criminal intent where a victim was stabbed multiple times. See Clinton, 970 So. 2d at 414 (Fla. Dist. Ct. App. 2007). This Court has similarly recognized that "the Double Jeopardy Clause prohibits the State from dividing a single criminal act into multiple counts of the same offense," and consistent with that principle, "multiple blows during one fight or attack usually constitute only a single offense of battery." State v. Fonseca-Cintron, 2019 VT 80, ¶ 19, 213 Vt. 11, 238 A.3d 594 (quotation and brackets omitted). We explained that "[i]n determining whether the underlying conduct constituted one continuous action or multiple actions, we rely on the factors

7

set forth in State v. Fuller, such as 'the elapsed time between successive parts of the defendant's conduct' and 'whether the defendant's conduct occurred in more than one geographical location.' " Id. (quoting State v. Fuller, 168 Vt. 396, 400, 721 A.2d 475, 479 (1998)). "The critical inquiry is whether the temporal and spatial separation between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act." Id. (quotation omitted); see also Fuller, 168 Vt. at 400, 721 A.2d at 479 (explaining that "[i]n deciding whether an incident of sexual assault consists of one continuous assault or separate acts, we consider several factors, including: the elapsed time between successive parts of the defendant's conduct; whether the defendant's conduct occurred in more than one geographic location; whether an intervening event occurred between successive parts of the defendant's conduct; whether there was sufficient time for reflection between assaultive acts for the defendant to again commit himself").

¶ 18.   The Fuller court considered whether a defendant's sexual assaults on a child constituted two separate acts.  It concluded that while the defendant's conduct in two different rooms of the home were "close in time," "[t]here was . . . an intervening event between the two acts—[the child's] escape from defendant and his flight from the bedroom into the living room"— and "[m]ost importantly, [the] defendant had sufficient time between the commission of the two acts to reflect upon what he was doing and to recommit himself to sexually assaulting the child that had escaped."  Id. (citing Harrell v. State, 277 N.W.2d 462, 470 (Wis. Ct. App. 1979) (concluding that, even more germane than time interval is fact defendant formed intent to again assault victim and again applied force necessary to accomplish his purpose)).

¶ 19.   Analogizing to the cases above and construing the statute narrowly as we must, we conclude that the phrase "two or more acts over a period of time, however short," 12 V.S.A. § 5131(1)(A), requires consideration of factors similar to those described in Fuller.  We reach this

conclusion mindful that given the common definition of "course of conduct" in civil and criminal law, "any conduct that we hold warrants the imposition of a stalking order could also theoretically subject a defendant to criminal sanctions, based not only on a violation of the stalking order but on the underlying conduct itself." Hinkson, 2020 VT 69, ¶¶ 29-30.

¶ 20.    As a general matter, the question of whether there are "two or more acts" presents a question of fact for the trial court to resolve, considering all of the circumstances. In this case, however, we conclude, as a matter of law, that the evidence shows only a single continuing incident. While the parties' confrontation began in one area and continued into a different area, there was no break in the conduct. Plaintiff testified, and the court found, that after striking plaintiff, defendant followed him out of the work building to the parking lot. She continued to yell at him while she followed him, and she then spit at him. We find it clear, as a matter of law, given the sequence of events testified to by plaintiff, that the spitting and the striking were part of a single escalating episode, not two sufficiently distinct events. Thus, because the evidence here is insufficient to show "two or more acts over a period of time, however short," we must reverse the trial court's decision. Given our conclusion, we do not reach any of defendant's remaining arguments.

Reversed.

FOR THE COURT:

_____

Chief Justice

9