NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 29

No. 22-AP-199

| | |
|---|---|
| Ava Morton | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Mayah Young | March Term, 2023 |

Robert P. Gerety, Jr., J.

Michelle Donnelly, Jaeden Spitale, Legal Intern, and Chester Harper, Fellow, South Royalton Legal Clinic, South Royalton, for Plaintiff-Appellant.

Mayah Young, Pro Se, White River Junction, Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **WAPLES, J.**   Plaintiff Ava Morton appeals the denial of her complaint for an order against stalking. We conclude that defendant's conduct did not fall within the statutory definition of stalking and therefore affirm the decision below.

¶ 2.     In May 2022, plaintiff's mother filed a complaint on behalf of plaintiff, who was then seventeen years old, seeking an anti-stalking order against defendant Mayah Young. The affidavit attached to the complaint alleged that in April 2022, defendant had posted a video on the social media platform TikTok that included a half-naked picture of plaintiff. Plaintiff's mother called the police, who went to defendant's home, directed her to delete plaintiff's picture from her phone, and warned her that she could end up in a lot of trouble because plaintiff was a minor. The

complaint alleged that afterward, defendant posted another video in which she threatened to hurt plaintiff, followed by two more videos in which she suggested that she still had the picture and might send it to others.

¶ 3. The civil division declined to issue a temporary order, concluding that the alleged conduct did not fall within the definition of stalking. Plaintiff notified the court of her intent to pursue the complaint, and the court set the matter for a final hearing in May 2022. See V.R.C.P. 80.10 (setting forth procedure for actions for orders against stalking). Plaintiff was represented by counsel and defendant appeared pro se. Plaintiff, defendant, and defendant's foster parent testified at the hearing.

¶ 4. Plaintiff testified that she and defendant used to be best friends. Plaintiff testified that in mid-April 2022, defendant posted a picture of plaintiff on TikTok in which it was clear that plaintiff was not wearing a shirt or bra, although her breasts were not visible. Defendant included a caption that mentioned plaintiff's username and stated, "don't send my man pics TO MY PHONE." Plaintiff testified that defendant was referring to plaintiff's ex-boyfriend, C.M., who had been using defendant's phone.[1] She testified that she had sent the photo privately to C.M. using Snapchat and did not expect it to be shared with others.

¶ 5. Plaintiff testified that defendant subsequently posted a TikTok video with a caption stating, "when he cheats on me and I don't pull up to the bitch$ house and dr@g her by the sc@lp cuz ik where she rests her head every night." The post also included the words "you'll be hearing me rev my car outside your house every night tho booo." Defendant then posted a second video in which she stated, "If you send nudes to a man with a girlfriend, expect that shit to get leaked. Expect that shit to get leaked. No shame on my end for leaking your shit." In the comments to

---

[1] We refer to C.M. by his initials because it is unclear whether he is a minor.

the third video, defendant implied that she would send the image to others, including plaintiff's father.

¶ 6. Later, defendant posted a third video with a caption stating, "took cardio's advice and the b!tch called the cops. maybe keep your t!ts away and away from ppl in relationships. everything on the internet is permanent if you think I don't still have it and everyone else you're wrong bae." The post also stated, "cops couldn't do anything boo #homewrecker."

¶ 7. Plaintiff testified that these videos made her feel degraded and violated, and that she cried a lot when she saw that defendant had posted her picture online. She testified that she hadn't been eating and that she had anxiety about going to school or out in public because she was worried that defendant would do something to her or show up at her house. She also feared that defendant would share the photo with future employers.

¶ 8. Defendant then testified. She stated that after the police officer came to her house, plaintiff and two other friends had driven up defendant's driveway. She argued that this demonstrated that plaintiff was not actually scared of defendant. She also testified that the video in which she discussed going to a woman's house was not directed at plaintiff. She stated that her then-boyfriend had cheated on her with five different girls, and the video was a blanket statement to warn everyone off. Defendant's foster parent testified that she saw a car full of girls pull up to their home but could not identify them.

¶ 9. The trial court issued a written order in which it found that defendant's posts were directed at plaintiff and had caused plaintiff emotional stress, anxiety, embarrassment, and loss of appetite. However, the court found that only one of the posts—the video in which defendant stated that she would "pull up to the bitch$ house and dr@g her by the sc@lp"—threatened physical harm. The other posts, in which defendant indicated that she still had the nude image and might republish it to others, threatened emotional but not physical harm. Relying on this Court's decision in Hinkson v. Stevens, 2020 VT 69, 213 Vt. 32, 239 A.3d 212, the court concluded that plaintiff

3

had failed to meet her burden of showing that defendant engaged in a course of conduct constituting stalking, because the evidence demonstrated only one threat of physical harm. It therefore denied plaintiff's request for an order against stalking. This appeal followed.[2]

¶ 10. Plaintiff argues that the decision below should be reversed because defendant made two or more threats that caused her substantial emotional distress and therefore engaged in a course of conduct sufficient to constitute stalking under 12 V.S.A. § 5131. Whether the trial court correctly interpreted the statute is a question of law that we review de novo. See Hinkson, 2020 VT 69, ¶ 26 ("In considering this appeal, we interpret the stalking statute and review the court's legal conclusions without deference.").

¶ 11. Under the civil stalking statute, stalking is defined as "engag[ing] purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to: (A) fear for his or her safety or the safety of a family member; or (B) suffer substantial emotional distress." 12 V.S.A. § 5131(6). " 'Course of conduct' means two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property."[3] Id. § 5131(1)(A). This definition includes direct or indirect acts "by any action, method, device, or means," but does not include constitutionally protected activity. Id.

¶ 12. In Hinkson v. Stevens, a majority of this Court concluded that the term "threatens, or makes threats about" in § 5131(1) encompasses "only threats of physical harm." 2020 VT 69, ¶ 42. The majority reasoned that the statute expressly excludes constitutionally protected activity from the definition of "course of conduct." Id. ¶ 44. This meant that it could only apply to "true threats," which are "those statements where the speaker means to communicate a serious

---

[2] Defendant did not enter a notice of appearance or otherwise participate in this appeal.

[3] Plaintiff does not claim that defendant followed, monitored, or surveilled her.

expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," and which are not protected by the First Amendment. Id. (quoting State v. Noll, 2018 VT 106, ¶ 24, 208 Vt. 474, 199 A.3d 1054). The majority found this construction to be consistent with prior caselaw interpreting the term "threat" in other contexts to mean "an expression of an intent to inflict harm, particularly physical harm, on another person." Id. ¶ 45 (discussing State v. Schenk, 2018 VT 45, ¶ 11, 207 Vt. 423, 190 A.3d 820, and State v. Johnstone, 2013 VT 57, ¶ 17, 194 Vt. 230, 75 A.3d 642). Finally, the majority reasoned that "to the extent that 'threat' can and has been interpreted to encompass threats of nonphysical harms," it was appropriate to resolve any ambiguity in favor of the defendant, which meant applying "the more limited definition of threat as a communicated intent to inflict physical harm on another person." Id. ¶ 46.

¶ 13.    Hinkson plainly controls this case. The trial court found that only one of the videos defendant posted can be construed to imply a threat of violence to plaintiff. The others threatened reputational or emotional harm, but not physical harm. Accordingly, these threats—though demeaning and disturbing—could not support a finding that defendant stalked plaintiff within the meaning of the statute. See 12 V.S.A. § 5131(1) (requiring two or more acts of threatening to constitute stalking). Plaintiff does not challenge these findings, which support the court's decision to deny her complaint.

¶ 14.    Instead, plaintiff urges us to reconsider Hinkson. She argues that a threat to disseminate nude photos, while not a "true threat" of physical harm, is also not a constitutionally protected activity and therefore can be restrained by the civil stalking statute. She contends that Hinkson's narrow construction of the term "threatens, or make threats about" is inconsistent with the remedial purpose of the statute. She further argues that the previous Vermont caselaw referred to in Hinkson did not support the interpretation favored by the Court and that the rule of lenity should not be applied to the civil stalking statute.

5

¶ 15.    We considered and rejected most of plaintiff's arguments in <u>Hinkson</u>.  See 2020 VT 69, ¶¶ 32-34, ¶¶ 44-46; <u>id</u>. ¶¶ 54-62, 71 (Reiber, C.J., dissenting) (opining that civil stalking statute should be construed more broadly due to its remedial nature and disagreeing that rule of lenity applies or that only true threats are proscribed).  Plaintiff nevertheless argues that we should revisit our analysis based on our decision in <u>State v. VanBuren</u>, 2018 VT 95, 210 Vt. 293, 214 A.3d 791.[4]    In <u>VanBuren</u>, we held that Vermont's statute criminalizing disclosure of nonconsensual pornography, 13 V.S.A. § 2606, did not violate the First Amendment.  <u>Id</u>. ¶ 69. Plaintiff asserts that, by extension, threats to disclose nonconsensual pornography are not constitutionally protected activity and can be proscribed by the civil stalking statute.  However, an actual disclosure is different from a threat to disclose.  Section 2606, by its plain language, only addresses actual disclosures.  Nowhere in <u>VanBuren</u> did we state or imply that the statute would penalize threatened, as opposed to actual, disclosure of nonconsensual pornography, or that such a proscription would comport with the First Amendment.  Rather, in concluding that § 2606 was narrowly tailored to serve a compelling governmental interest, we emphasized that it did not even apply to all types of disclosures.  See <u>id</u>. at ¶¶ 62-65 (observing that § 2606 only criminalizes knowing disclosure of images without the victim's consent and does not cover disclosures made in public interest or in matters of public concern, or in setting where person does not have reasonable expectation of privacy).  The issue of whether a threat to disclose nonconsensual pornography is protected speech was not raised or addressed in <u>VanBuren</u>.  That decision therefore does not oblige us to reconsider <u>Hinkson</u>'s interpretation of the civil stalking statute.

¶ 16.    Plaintiff points out that the First Amendment allows the government to restrict speech that is integral to criminal conduct.  See <u>Giboney v. Empire Storage & Ice Co.</u>, 336 U.S.

---

[4]  We had no reason to consider <u>VanBuren</u> in <u>Hinkson</u> because the latter case did not involve threatened or actual disclosure of nonconsensual pornography.

6

490, 502 (1949). Plaintiff contends that if defendant had followed through with her threats, "she would have been committing a crime under 13 V.S.A. § 2606," and therefore her threats were not subject to the same protection as so-called "pure speech." Although we did not address the integral-to-criminal-conduct category of speech in Hinkson, we do not find this argument to be a compelling basis on which to overturn or expand our interpretation of a threat sufficient to constitute stalking, for the following reasons.

¶ 17. First, VanBuren undermines plaintiff's argument that defendant's threats, if carried out, would necessarily have supported a criminal conviction. In that case, we explained that § 2606 "does not clearly reach images recorded in a private setting but distributed by the person depicted to public or commercial settings or in a manner that undermines any reasonable expectation of privacy." 2018 VT 95, ¶ 66 (emphasis omitted). The defendant in VanBuren was charged with violating § 2606 by posting on Facebook nude photos that the complainant had sent to defendant's boyfriend using Facebook Messenger. We affirmed dismissal of the charge against the defendant, concluding the State had not shown that the complainant had a reasonable expectation of privacy in the images as required under the statute because the complainant and the boyfriend were not in a relationship and there was no evidence of a promise or request between them to keep the images confidential. Id. ¶ 106. The facts of this case are similar in many respects to VanBuren, calling into question whether defendant's conduct could in fact support a conviction under § 2606.

¶ 18. Further, the caselaw cited by plaintiff offers little support to her claim. The primary case upon which plaintiff relies is a federal circuit court decision affirming a stalking conviction that was based in part on threats to share nude photos of the victim. See United States v. Ackell, 907 F.3d 67, 76-78 (1st Cir. 2018) (rejecting claim that federal stalking statute was facially overbroad because it criminalized protected speech). Ackell is inapposite for several reasons. The defendant in Ackell did not claim that the stalking statute was unconstitutional as applied to him, so the court did not actually address whether his threats were protected speech. Further, the federal

stalking statute interpreted by Ackell is significantly broader than Vermont's statute because it only requires proof of two or more "acts" that cause substantial emotional distress. See 18 U.S.C. § 2261A (making it a crime to, "with the intent to kill, injure, harass, intimidate, or place under surveillance," use mail or electronic communication system to engage in course of conduct that places person in reasonable fear of death or serious bodily injury or causes substantial emotional distress); id. § 2266(2) (defining "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose"). Unlike the Vermont statute, these acts do not have to fall within the narrow categories of following, monitoring, surveilling, or threatening; the federal statute does not even include the terms "threat" or "threaten." Cf. 12 V.S.A. § 5131(1). Finally, the Ackell court concluded that the federal statute was not overbroad because, to the extent it targeted speech made with intent to harass or intimidate, it clearly referred only to criminal harassment, which involves true threats or speech integral to criminal conduct, or intimidation, which is a type of true threat. 907 F.3d at 76. Here, plaintiff does not identify any criminal statute applicable to defendant's conduct other than § 2606. Ackell is therefore of limited value in this context and does not justify revisiting our analysis in Hinkson.[5]

¶ 19. "While not slavish adherents to stare decisis, we generally require more than mere disagreement to overturn a decision, particularly one of such recent vintage." State v. Berini, 167 Vt. 565, 566, 701 A.2d 1055, 1056 (1997) (mem.) (citation omitted). Plaintiff has offered no persuasive reason for us to overrule a case decided just three years ago. There is no evidence that this Court has moved away from our holding in Hinkson since it was issued or that Hinkson was inconsistent with a trend in other jurisdictions. Cf. Coop. Fire Ins. Ass'n of Vt. v. White Caps, Inc., 166 Vt. 355, 356, 694 A.2d 34, 34 (1997) (reconsidering previous caselaw based in part on

---

[5] Plaintiff also cites various criminal extortion cases discussing the general principle that speech integral to criminal conduct, such as threats to extort, may be regulated, but she does not claim that defendant's speech in this case was integral to extortion or any other type of crime.

evolving trends in jurisprudence of other jurisdictions). Nor has the Legislature amended the statute since we decided Hinkson. See Chittenden v. Waterbury Ctr. Cmty. Church, Inc., 168 Vt. 478, 490-91, 726 A.2d 20, 29 (1998) (noting that "we do not lightly overrule settled law especially where it involves construction of a statute which the legislature could change at any time." (quotation omitted)). These considerations weigh against overturning Hinkson, "even assuming that current members of the Court would have reached a different decision." O'Connor v. City of Rutland, 172 Vt. 570, 571, 772 A.2d 551, 553 (2001).

Affirmed.

FOR THE COURT:

_____

Associate Justice