VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    25-AP-439



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2026

Melanie MacEachern\* v. Kurtis Mellett   }   APPEALED FROM:
   }   Superior Court, Orleans Unit, Civil Division
   }   CASE NO. 25-ST-01200
   Trial Judge: Benjamin Battles

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals the civil division's order denying her request for an order against stalking.  On appeal, plaintiff argues that the evidence was sufficient to demonstrate that defendant stalked her by monitoring or surveilling her.  We reverse and remand.

The parties are neighbors on Lake Eligo in Craftsbury, Vermont.  The parties and their spouses have been engaged in litigation since May 2024.  In October 2025, plaintiff filed a complaint for an order against stalking, alleging that since the civil suit was filed, defendant and his wife had been harassing her by walking or driving ATVs along the property line and staring at and taking pictures of plaintiff's house.  Plaintiff asserted that the conduct made her feel threatened, was distressing, and caused her to fear for her safety.

The court held a hearing.  Plaintiff testified that at least once a day defendant rode his ATV back and forth several times and if plaintiff left her house, defendant appeared on foot to stare at her from the road.  She stated that because of the behavior she stopped gardening and going for walks because she was afraid to leave the house.  She described a particular occasion when defendant drove around her property, parked, and stood at the property line for over an hour, watching her.  She testified that she intended to sell her house due to defendant's behavior. Plaintiff's husband also described defendant's behavior of driving past the house and then stopping for long periods to look in the window.  He testified that due to defendant's actions, he and plaintiff stopped inviting company over and that it was very upsetting.  He also stated that defendant's behavior had caused his wife to stop seeking work, to become closed off from friends, to stay inside, and to not bring their daughter to the library.  A friend of plaintiff's testified that on one occasion when he was at plaintiff's house, defendant stood about fifty feet from the house for a couple of hours and was staring at the house.  He also stated that defendant's pickup truck drove slowly around plaintiff's property a couple of times.  He testified that the behavior was distressing.

Defendant testified that he had not purposely tried to watch plaintiff and might glance over when he walked by the property. He explained that one day he was on the road around plaintiff's property to observe work being done on the road, and although he saw plaintiff, he did not stare at her. He alleged that he felt plaintiff was staring at him on that occasion and that plaintiff's detailing of his movements in general caused him to feel monitored by her. Defendant's wife also testified that she had not stared at plaintiff's property for an extensive period, and that she walked along the road around plaintiff's house for pleasure and to reach parts of her property. Neither defendant nor his wife sought an anti-stalking order against plaintiff and defendant introduced no evidence that plaintiff approached his property or watched him on a repeated or regular basis.

The court made very sparse oral findings on the record. The court stated it had "no doubt that the way the relationship has gone between the parties has caused [plaintiff] and [her husband] to change their conduct and suffer emotional distress." The court further observed that there was "a lot of evidence about [defendant and his wife] going back and forth on their property and looking over at plaintiffs' property" and it seemed like "both sides [were] watching each other's every moves and watching each other with a significant amount of anxiety." Despite this observation, the court concluded, without further explanation, that it did not "believe based on the evidence presented" that relief was warranted "under the anti-stalking statute," and denied the petition.

In light of the court's apparent finding that the defendant was "watching [plaintiff's] every move," plaintiff's counsel asked the court to reconsider its denial, arguing that watching plaintiff's every move constituted monitoring within the meaning of the statute. The court rejected the request, stating:

> The finding was that . . . defendants were going back and forth on their property, and that folks were looking around. I did not find that they were watching them as far as following, monitoring or surveilling. . . . [W]e've had evidence on both sides. Defendants testified that they were using their properties, working on their properties, looking around. Plaintiffs testified that they interpreted that as following, monitoring, or surveillance. I don't find that that was proven by a preponderance of the evidence.

The court therefore denied the request.[1] Plaintiff appeals.

"Under Vermont's civil stalking statute, a court must impose a no-stalking order if it 'finds by a preponderance of evidence that the defendant has stalked' the plaintiff." Haupt v. Langlois, 2024 VT 3, ¶ 8, 218 Vt. 605 (quoting 12 V.S.A. § 5133(d)). Stalking is defined in the statute as "a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to" fear for their safety or suffer substantial emotional distress. 12 V.S.A. § 5131(6). Course of conduct is in turn defined as "two or more acts . . . in which a person follows, monitors, surveils, threatens, or makes threats about another person." Id. § 5131(1)(A)(i). To demonstrate surveillance requires showing an "intent to closely watch or carefully observe a person or place." Scheffler v. Harrington, 2020

---

[1] The court's findings refer to plaintiffs and defendants in the plural. The record reflects that the order against stalking was filed solely by plaintiff, not her husband, and named only defendant and not his wife.

VT 93, ¶ 10, 213 Vt. 364. Merely passing by someone's property and looking around is insufficient to demonstrate such intent. Id. ¶ 11 (holding that facts did not demonstrate defendant surveilled plaintiff where defendant did not purposefully pass plaintiff's home or closely watch or carefully observe plaintiff). "Monitoring . . . involves tracking or collecting some form of information about the person being monitored or their activities." Hinkson v. Stevens, 2020 VT 69, ¶ 38, 213 Vt. 32.

On appeal from a decision regarding an anti-stalking order, we will uphold the trial court's "findings if supported by the evidence and its conclusions if supported by the findings." Haupt, 2024 VT 3, ¶ 9 (quotation omitted). "We leave it to the trial court to assess the credibility of witnesses and weigh the evidence." Id. (quotation omitted). "However, we review the trial court's legal conclusions de novo." Id. Although we defer to the court's assessment of the evidence, "[t]he trial court has a fundamental duty to make all findings necessary to support its conclusions, resolve the issues before it, and provide an adequate basis for appellate review." Sec'y, Vt. Agency of Nat. Res. v. Irish, 169 Vt. 407, 419 (1999).

Plaintiff argues that the trial court erred in concluding that the evidence did not support a finding that defendant monitored or surveilled her. Plaintiff contends that defendant's behavior—including his routinely circling her home in his car and on his ATV, loitering on and around the property line for hours at a time while watching her, and specifically approaching the property line when plaintiff left her home—amounted to monitoring and surveilling. Plaintiff argues that defendant's action had no legitimate purpose and that his unwanted visits to her property line made her uncomfortable and caused her to substantially change her patterns of behavior and feel a general reticence to leave her home. Moreover, plaintiff contends that the trial court's finding that "both sides are watching each other's every move[]" was necessarily a finding that defendant watched plaintiff's every move. Given that finding, she argues that the trial court should have also found as a matter of law that the defendant stalked her by monitoring and surveilling her.

We agree with plaintiff that the trial court's apparent finding that both sides were watching each other's every move would have supported the conclusion that defendant surveilled or monitored plaintiff within the meaning of the anti-stalking statute. See Scheffler, 2020 VT 93, ¶ 10 (explaining that surveillance includes closely watching or carefully observing someone); Hinkson, 2020 VT 69, ¶ 38 (providing that monitoring means keeping close track of or collecting information about person).[2]

The trial court made additional findings, however, that were not entirely consistent with this conclusion. After the reconsideration request, the court found that "defendants were going back and forth on their property, and that folks were looking around." Because these additional findings possibly imply that the court credited defendant's version of events, they appear to be inconsistent with the court's initial finding that defendant watched plaintiff's every move and was "looking over at . . . plaintiff's property."

Additionally, even though the parties gave conflicting testimony on many material issues, the trial court engaged in no analysis to resolve these conflicts. It made no credibility findings, and it did not grapple with the parties' competing evidence on defendant's behavior and intent. Plaintiff and her witnesses alleged, among other things, that defendant stood at the property line

_____

[2] Whether plaintiff watched defendant in return is irrelevant because defendant did not accuse plaintiff of stalking him.

and watched her for hours, routinely circled her home and purposely came outside to watch her when she left the house. Defendant claimed that he was outside for legitimate purposes and not intentionally watching plaintiff. The court's very limited findings do not resolve what happened or which version the court credited.

Moreover, the court made no express findings regarding whether defendant knew or should have known that his conduct would cause a reasonable person to suffer substantial emotional distress, such as through modifications to the person's routines, as required to support a stalking claim. See 12 V.S.A. § 5131(6)(B)(ii). The court stated that it had "no doubt that the way the relationship has gone between the parties has caused [plaintiff] and [her husband] to change their conduct and suffer emotional distress," and, indeed, our review of the transcript shows that the evidence on this point was uncontroverted. The court's observation could imply that the court believed not only that defendant stalked plaintiff, but also—especially given the words "no doubt"—that he acted with the requisite awareness of the harm it could cause the plaintiff. But given the murkiness created by the court's statements after plaintiff's well-placed request for reconsideration, a remand is needed for additional factual findings and clarifications.

Because the court's findings are inadequate to allow us to discern the basis of its conclusion, we reverse and remand for additional findings on the elements of stalking set forth above. See Irish, 169 Vt. at 419 (reversing and remanding where trial court's findings were inadequate).

Reversed and remanded.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
Christina E. Nolan, Associate Justice

_____
Michael P. Drescher, Associate Justice